UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

CASE NO. 21-13059-H

---

**DEL MONTE INTERNATIONAL GMBH,**

Appellant,

vs.

**INVERSIONES Y PROCESADORA TROPICAL INPROTSA, S.A.,
JORGE LUIS GURRIA HERNANDEZ, AND MANUEL GURRIA
ORDONEZ**

Appellees.

---

Appeal from the United States District Court
for the Southern District of Florida
Case No. 1:16-cv-24275-FAM

---

**APPELLANT'S INITIAL BRIEF**

---

Brian J. Stack, Esq.
Robert Harris, Esq.
Denise Crockett, Esq.
STACK FERNANDEZ & HARRIS, P.A.
1001 Brickell Bay Drive, Suite 2650
Miami, Florida  33131
Telephone:  305-371-0001
Facsimile:   305-371-0002

*Attorneys for Appellant, Del Monte International GmbH*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Rule 26.1-1 of the Eleventh Circuit Rules, Appellant, DEL MONTE INTERNATIONAL GMBH ("Appellant"), sets forth the trial judge, attorneys, persons, associations of persons, firms, partnerships, or corporations that may have an interest in the outcome of this appeal and the case below, including subsidiaries, conglomerates, affiliates and parent corporations, including publicly held corporations that own 10% or more of any party's stock and other identifiable legal entities related to a party:

1.  Congelas Del Monte

2.  Corporacion Bandeco C.R., S.A.

3.  Corporacion de Desarrollo Agricola Del Monte, S.A.

4.  Crockett, Denise B., of Stack Fernandez & Harris, P.A.

5.  Del Monte Fresh Produce Company

6.  Del Monte Fresh Produce International Inc.

7.  Del Monte Fresh Produce N.A., Inc.

8.  Del Monte International GmbH

9.  Espana, Alejandro Ogarrio Ramirez, Arbitrator

10. Fernandez, Jr., Lazaro, of Stack Fernandez & Harris, P.A.

11. Fresh Del Monte Produce Inc., a publicly traded company on the New York Stock Exchange under ticker symbol "FDP".

12. Graham, Luis Enrique, of Hogan Lovells US LLP

13.   Gurria Hernandez, Jorge Luis

14.   Gurria Ordonez, Manuel

15.   Harris, Robert, of Stack Fernandez & Harris, P.A.

16.   Hogan Lovells US LLP

17.   Homer, William, of Hogan Lovells US LLP

18.   International Chamber of Commerce, International Court of Arbitration

19.   Inversiones y Procesadora Tropical, S.A. (INPROTSA)

20.   Lindsay, Alvin F., of Hogan Lovells US LLP

21.   Lorenzo, Richard C., of Hogan Lovells US LLP

22.   Louis, Honorable Lauren Fleischer, United States Magistrate Judge

23.   Massey, David, of Hogan Lovells US LLP

24.   Moreno, Honorable Federico A., United States District Judge

25.   Naon, Horacio Grigera, Arbitrator

26.   Ocariz, Humberto, Arbitrator

27.   Productora y Exportadora de Frutas Verduras Fruver S.A.

28.   Stack, Brian J., of Stack Fernandez & Harris, P.A.

29.   Stack Fernandez & Harris, P.A.

30.   Steinberg, Marty, of Hogan Lovells US LLP

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Appellant, Del Monte International GmbH, hereby discloses that it is an indirect subsidiary of, and its ultimate parent corporation is, Fresh Del Monte Produce Inc., a publicly traded company on the New York Stock Exchange under ticker symbol "FDP."

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Pursuant to Fed. R. App. P. 34(a)(2) and 11th Cir. R. 28-1(c), Appellant respectfully submits that the decisional process will be significantly aided by oral argument and a robust discussion of the issues. Furthermore, oral argument will allow the Court to clarify its understanding of the facts and explore Appellant's contentions in greater detail.

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTERESTED PERSONS    i

CORPORATE DISCLOSURE STATEMENT    iii

STATEMENT REGARDING ORAL ARGUMENT    iv

TABLE OF CITATIONS    viii

I.    JURISDICTIONAL STATEMENT    1

II.    INTRODUCTION    2

III.    STATEMENT OF THE ISSUES    5

IV.    STATEMENT OF THE FACTS AND COURSE OF PROCEEDINGS    6

     A.    Events Prior to Del Monte's Motion to Show Cause    6

     B.    INPROTSA's Violation of the Destruction Injunction and Sales Injunction    8

     C.    Del Monte Moves to Hold INPROTSA and the Gurrias in Contempt    9

     D.    Del Monte's Motion to Show Cause Is Referred to the Magistrate Judge for a Report and Recommendation    10

     E.    The District Court Adopts the First R&R in Its Entirety    12

     F.    INPROTSA's and the Gurrias' Response to District Court's Order to Show Cause    13

     G.    Del Monte's Renewed Motion for Entry of Final Judgment of Contempt    13

# TABLE OF CONTENTS

*Page*

H.   Del Monte's Renewed Motion for Entry of Final Judgment of Contempt Is Referred to Magistrate Judge for a Report and Recommendation    15

I.   The Magistrate Judge Issues a Report and Recommendation on Del Monte's Renewed Motion for Final Judgment of Contempt    16

J.   The Parties File Objections to the Second R&R    17

K.   The District Court Adopts, in Part, the Second R&R and Issues an Order to Show Cause to INPROTSA and the Gurrias Why They Should Not Be Held in Contempt    17

L.   The District Court Holds INPROTSA in Contempt    18

M.   Del Monte Files Its Notices of Appeal    20

V.   STATEMENT OF THE STANDARD OR SCOPE OF REVIEW    20

VI.   SUMMARY OF ARGUMENT    21

VII.   ARGUMENT    23

A.   Disgorgement of INPROTSA's Ill-Gotten Gains Is a Proper Compensatory Remedy for Violation of the Sales Injunction    23

1.   Disgorgement Is a Recognized Contempt Remedy    23

2.   *F.T.C. v. Leshin* Authorizes Disgorgement    31

3.   INPROTSA Must Disgorge Gross Revenues with No Setoff For Expenses Incurred    33

4.   Because Del Monte Showed that It Was Harmed by INPROTSA's Violation of the Sales Injunction, Disgorgement Was Proper    38

# TABLE OF CONTENTS

*Page*

　　　5.　The Contempt Order Should Be Reversed with　41
　　　　　Directions to Award Disgorgement

　　B.　Del Monte Is Also Entitled to a Disgorgement Award for　42
　　　　Wrongful Sales between the Date of the Final Award and
　　　　the Date the Final Judgment Was Entered

　　C.　INPROTSA's Officers, Jorge Gurria and Manuel Gurria,　50
　　　　Should Be Held in Contempt

VIII.　CONCLUSION　52

IX.　CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME　54
　　　LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE
　　　REQUIREMENTS

X.　CERTIFICATE OF SERVICE　55

# TABLE OF CITATIONS

*Cases*                                                      *Page(s)*

\* Citations marked with an asterisk are those upon which Appellee principally relies.

*Abbott Labs. v. Unlimited Beverages, Inc.*,                  *passim*
218 F.3d 1238 (11th Cir. 2000) \*

*AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*,    43
579 F.3d 1268 (11th Cir. 2009)

*American Airlines, Inc. v. Allied Pilots Assoc.*,             51
228 F.3d 574 (5th Cir. 2000)

*Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*,           48
562 F. App'x 828 (11th Cir. 2014)

*Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*,          26
1990 WL 106846 (S.D.N.Y. Jul. 23, 1990)

*Certified Midwest, Inc. v. Local Union No. 738,*             46
*Int'l Brotherhood of Teamsters,*
1987 WL 17470 (N.D. Ill. Sep. 18, 1987) \*

*Chicago Truck Drivers v. Bhd. Lab. Leasing,*                52
207 F.3d 500 (8th Cir. 2000)

*Citronelle-Mobile Gaterhin, Inc. v. Watkins*,               24
943 F.2d 1297 (11th Cir. 1991)

*Clairson Int'l Corp. v. Master Tool Co., Inc.*,             25
1986 WL 84374 (S.D. Fla. Feb. 4, 1986)

*CVS Health Corp. v. Vividus, LLC*,                          20
878 F.3d 703 (9th Cir. 2017)

# TABLE OF CITATIONS

*Cases*                                                                 *Page(s)*

*Electrical Workers Pension Trust Fund of Local*              51, 52
*Union #58 v. Gary's Electric Service Co.,*
340 F.3d 373 (6th Cir. 2003)

*ePlus Inc. v. Lawson Software, Inc.,*                               40
946 F. Supp. 2d 449 (E.D. Va. 2013)

*F.T.C. v. Garden of Life, Inc.,*                                        24
516 F. App'x 852 (11th Cir. 2013)

*F.T.C. v. Leshin,*                                                        *passim*
618 F.3d 1221 (11th Cir. 2010) *

*F.T.C. v. Leshin,*                                                         27
2011 WL 13134194 (S.D. Fla. Nov. 15, 2011),
*adopted,* 2012 WL 12892784 (S.D. Fla. Feb. 16,
2012), *aff'd,* 719 F.3d 1227 (11th Cir. 2013)

*F.T.C. v. Natl. Urological Group, Inc.,*                           20
786 F. App'x 947 (11th Cir. 2019)

*F.T.C. v. RCA Credit Servs., LLC,*                               25, 34
2011 WL 5924969 (M.D. Fla. Oct. 5, 2011)

*F.T.C. v. Wash. Data Res., Inc.,*                                    34
704 F.3d 1323 (11th Cir. 2013)

*Falls Stamping & Welding Co. v. Int'l Union, United*      46
*Automobile, Aircraft & Agriculture Implement Workers*
*of America,*
1978 WL 14034 (N.D. Ohio Sep. 18, 1978), *aff'd,*
667 F.2d 1026 (6th Cir. 1981)

*Garmon Corp. v. Healthypets, Inc.,*                              26
2018 WL 4944865 (C.D. Cal. Oct. 10, 2018)

# TABLE OF CITATIONS

*Cases*                                                                      *Page(s)*

*Gen'l Star Indem. Co. v. Triumph Hous. Mgmt., LLC,*            2
855 F. App'x 599 (11th Cir. 2021)

*Guyana Tel. & Tel. Co., Ltd v. Melbourne Int'l Comms., Ltd.,*   29, 30
329 F.3d 1241 (11th Cir. 2003) *

*Howard Johnson Co., Inc. v. Khimani,*                          25, 40, 41
892 F.2d 1512 (11th Cir. 1990) *

*HPC US Fund 1, LP v. Wood*,                                    25
2015 WL 11667590 (S.D. Fla. Feb. 23, 2015)

*In re Chase & Sanborn Corp.,*                                  39
872 F.2d 397 (11th Cir. 1989)

*Inversiones y Procesadora Tropical INPROTSA, S.A.*             1, 6, 7
*v. Del Monte Int'l GmbH,*
921 F.3d 1291 (11th Cir. 2019), *cert. denied,* 140 S. Ct.
124 (2019)

*Inversiones y Procesadora Tropical INPROTSA, S.A.*             8
*v. Del Monte Int'l GmbH,*
2016 WL 10568064 (S.D. Fla. Dec.  6, 2016)

*Inversiones y Procesadora Tropical INPROTSA, S.A.*             8
*v. Del Monte Int'l GmbH,*
783 F. App'x 972 (11th Cir. 2019)

*Klein-Becker USA, LLC v. Englert*,                             36
711 F.3d 1153 (10th Cir. 2013)

*Leman v. Krentler-Arnold Hing Last Co.,*                       *passim*
284 U.S. 448 (1932) *

*Liu v. S.E.C.,*                                                *passim*
140 S. Ct. 1936 (2020) *

# TABLE OF CITATIONS

*Cases*                                                                 *Page(s)*

*Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.,*          passim
885 F.2d 1 (2d Cir. 1989) *

*Marcus v. Allied World Ins. Co.,*                                    27
384 F. Supp. 3d 115 (D. Me. 2019)

*Marion Mfg. Co. v. Long,*                                           46
588 F.2d 538 (6th Cir. 1978) *

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*         48
473 U.S. 614 (1985)

*Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.,*             30
889 So. 2d 180 (Fla. 2d DCA 2004)

*Parsons & Whittemore Alabama Mach. and Services*                  43
*Corp. v. Yeargin Const. Co., Inc.*,
744 F.2d 1482 (11th Cir. 1984)

*Reynolds v. Roberts*,                                               23
207 F.3d 1288 (11th Cir. 2000)

*Robert Lewis Rosen Assocs., Ltd. v. Webb,*                         46
2005 WL 1308942 (S.D.N.Y. Jun. 1, 2005), *aff'd,* 473
F.3d 498 (2d Cir. 2007)

*Root v. Railway Co.,*                                             29, 33
105 U.S. 189 (1882)

*S.E.C. v. AmeriFirst Funding, Inc.,*                               37
2008 WL 1959843 (N.D. Tex. May 5, 2008)

*S.E.C. v. Calvo,*                                                   41
378 F.3d 1211 (11th Cir. 2004)

# TABLE OF CITATIONS

*Cases*                                                                    *Page(s)*

*S.E.C. v. Fowler,*                                                              37
6 F.4th 255 (2d Cir. 2021)

*S.E.C. v. JT Wallenbrock & Assocs.,*                                           34
440 F.3d 1109 (9th Cir. 2006)

*S.E.C. v. Liu,*                                                                28
2021 WL 2374248 (C.D. Cal. June 7, 2021)

*S.E.C. v. Liu,*                                                                27
851 F. App'x 665 (9th Cir. 2021)

*S.E.C. v. Luna,*                                                               37
2014 WL 2960451 (D. Nev. Jun. 27, 2014)

*Sheet Metal Workers Int'l Assoc., Local No. 18*                                46
*v. Household Utils., Inc.,*
638 F. Supp. 177 (E.D. Wisc. 1986)

*Stryker Corp. v. Prickett,*                                                 26, 37
2016 WL 4433679 (W.D. Mich. Jul 22, 2016),
*adopted,* 2016 WL 4415041 (W.D. Mich. Aug. 19, 2016)

*THI of New Mexico at Hobbs Ctr., LLC v. Patton*,                               48
741 F.3d 1162 (10th Cir. 2014)

*Talk Fusion, Inc. v. Burling*,                                                 25
2016 WL 4527361 (M.D. Fla. Aug. 10, 2016),
*adopted,* 2016 WL 4507981 (M.D. Fla. Aug. 29, 2016)

*Tom James Co. v. Morgan,*                                                  *passim*
141 F. App'x 894 (11th Cir. 2005) *

*U.S. Commodity Futures Trading Comm'n v. Tayeh,*                          33, 34, 36
848 F. App'x 827 (11th Cir. 2021) *

# TABLE OF CITATIONS

***Cases***                                                               ***Page(s)***

*U.S. Commodity Futures Trading Comm'n v. Escobio,*          1
946 F.3d 1242 (11th Cir. 2020)

*U.S. v. City of Miami,*                                               24
195 F.3d 1292 (11th Cir. 1999)

*U.S. v. Fleischman,*                                                  51
339 U.S. 349 (1950)

*U.S. v. RaPower-1, LLC,*                                              34
960 F.3d 1240 (10th Cir. 2020)

*Wartsila Finland OY v. Duke Capital LLC,*                    44
518 F.3d 287 (5th Cir. 2008) *

*Zeiler v. Deitsch,*                                                   44
500 F.3d 157 (2d Cir. 2007) *


***Statutes and Other Authorities***                           ***Page(s)***

§ 78u(d)(5) of the Securities Exchange Act of 1934           28

9 U.S.C. § 13 *                                                       *passim*

9 U.S.C. § 203                                                        1

9 U.S.C. § 205                                                        1

28 U.S.C. § 1291                                                      1

28 U.S.C. § 2107(a)                                                   1

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*             *passim*

| *Statutes and Other Authorities* | *Page(s)* |
|---|---|
| Fed. R. App. P. 34(a)(2) | iv |
| Fed. R. App. P. 4(a)(1)(A) | 1 |
| Fed. R. Civ. P. 65(d)(2)(B) | 50 |
| 11th Cir. R. 28-1(c) | 4 |
| Florida Deceptive and Unfair Trade Practices Act, §§ 501.201-213 Fla. Stat. | 30 |
| § 51 of the Restatement (Third) of Restitution and Unjust Enrichment (2010) * | *passim* |

# I.

## <u>JURISDICTIONAL STATEMENT</u>

The District Court had subject matter jurisdiction over this action pursuant to 9 U.S.C. § 203 and 9 U.S.C. § 205. *See Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1300 (11th Cir. 2019).

Appellant, Del Monte International GmbH's ("Del Monte"), notices of appeal filed on September 7, 2021, ECF-305,[1] and September 8, 2021, ECF-307, concerning the District Court's August 10, 2021 Order Adopting Remaining Portions of Magistrate Judge Louis's July 16, 2020 Report and Recommendation and Order Finding Petitioner in Contempt, ECF-304 & 306, were timely under Fed. R. App. P. 4(a)(1)(A) and 28 U.S.C. § 2107(a) because they were filed within 30 days of entry of the August 10, 2021 order.   This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 because the August 10, 2021 final order of contempt under review, ECF-304, 306, involves both a finding of contempt and the imposition of a noncontingent contempt sanction. *U.S. Commodity Futures Trading Comm'n v. Escobio*, 946 F.3d 1242, 1248-49 (11th Cir. 2020).

The notices of appeal concerning the District Court's March 18, 2019 Order Adopting Magistrate Judge's Report and Recommendation and Notice to Appear,

---

[1] References to the docket entries in the District Court shall be abbreviated "ECF-___."

ECF-200, were timely because the March 18, 2019 Order was non-final and non-appealable when it was entered and did not become subject to appellate review until it merged into the District Court's order of contempt entered on August 10, 2021 final. *Gen'l Star Indem. Co. v. Triumph Hous. Mgmt., LLC*, 855 F. App'x 599, 601-02 (11th Cir. 2021) ("when a district court enters a final judgment, 'all prior non-final orders and rulings which produced the judgment' are merged into the judgment and subject to review on appeal."). *See also* Del Monte's Brief on Jurisdiction filed on October 15, 2021.

## II.

## <u>INTRODUCTION</u>

This appeal involves Del Monte's continuing effort over the last eight years to hold Appellee, Inversiones y Procesadora Tropical INPROTSA, S.A. ("INPROTSA"), accountable for its blatant refusal to comply in any manner with the restrictive covenants of a 2001 Pineapple Sales Agreement ("Agreement"), two injunctions imposed by an arbitral Tribunal enforcing the restrictive covenants, and a final judgment of the District Court adopting the two injunctions.

Pursuant to the Agreement, Del Monte provided INPROTSA with approximately 61 million scarce and expensive "MD-2" variety pineapple seeds (valued in excess of $25 million) and extensive technical expertise to transition INPROTSA's Costa Rican pineapple plantation from an obsolete variety called

"Champaka" to an extra sweet variety developed by Del Monte called the "MD-2" that is sold in supermarkets throughout the world today. In exchange for Del Monte's $25 million investment, INPROTSA agreed that, after the Agreement expired, it would either return to Del Monte or destroy all MD-2 vegetative materials (including all MD-2 pineapples) on its plantations derived from Del Monte's MD-2 seeds, and it would not sell any of the pineapples grown from the MD-2 vegetative material to third parties until it complied with its obligation to destroy or return the MD-2 plant stock.

The Agreement expired by its terms in December 2013. Despite reaping approximately $200 million in sales revenue from Del Monte's MD-2 seeds over the life of the Agreement and receiving the benefit of its bargain, INPROTSA *never* complied with the Agreement's post-termination restrictive covenants, thereby denying Del Monte the benefit of its bargain.

Del Monte sued INPROTSA in arbitration and obtained a Final Arbitral Award in June 2016 ("Final Award") requiring INPROTSA, *inter alia*, to destroy 93% of the MD-2 vegetative material on its plantations (the "Destruction Injunction"), enjoining INPROTSA from selling 93% of its MD-2 pineapple production to third parties (the "Sales Injunction"), and ordering INPROTSA to disgorge $26 million in gross revenues that INPROTSA received from sales in violation of the Agreement's restrictive covenant prohibiting sales of MD-2

3

pineapples to third parties.

Instead of complying with the two injunctions imposed by the arbitral Tribunal, INPROTSA, at the direction of its executive officers, Jorge Luis Gurria Hernandez ("Jorge Gurria") and Manuel Gurria Ordonez ("Manuel Gurria"), made the strategic decision to continue selling Del Monte's MD-2 pineapples to third parties and pocketing all of the ill-gotten gains.

After the District Court rejected INPROTSA's frivolous petition to vacate the Final Award and its equally frivolous opposition to the Award's confirmation and sanctioned INPROTSA for raising bad faith arguments, which this Court affirmed in all respects, INPROTSA continued to sell pineapples cultivated from Del Monte's MD-2 plant stock to third parties in violation of the Sales Injunction. INPROTSA pocketed *$39,732,469* in ill-gotten revenues from prohibited pineapple sales since the Final Award was entered and more than *$126 million* since the Agreement expired.

Which brings us to this appeal. Del Monte moved to hold INPROTSA and the Gurrias in contempt for, *inter alia*, blatantly violating the Sales Injunction. The District Court held INPROTSA in contempt, but held that it was without legal authority to (i) award damages or disgorgement to Del Monte arising from INPROTSA's improper sales of MD-2 pineapples *after* the issuance of the Final Award but *before* entry of the Final Judgment confirming the Award or (ii) require

INPROTSA and the Gurrias to disgorge to Del Monte the ill-gotten revenues derived from their violation of the Sales Injunction *after* the District Court entered Final Judgment, finding disgorgement would constitute improper "punishment" for INPROTSA's contempt as opposed to lawful compensation to Del Monte.

The District Court's refusal to impose *any* compensatory fines against INPROTSA and the Gurrias was error.  The District Court's holding is in contravention of the Federal Arbitration Act and the binding precedent from this Court and the Supreme Court, and rewards INPROTSA's and the Gurrias' contempt of a federal court's injunctions and final judgment.  The District Court's refusal to impose a compensatory fine or award damages against INPROTSA and the Gurrias has allowed them to keep $39.7 million in sales revenue collected in violation of the Sales Injunction since the issuance of the Final Award.  The District Court's order should be reversed, and INPROTSA and the Gurrias should be required to disgorge their ill-gotten gains and permit Del Monte to receive the benefits of its bargain, its arbitration victory, and the Final Judgment.

## III.

## STATEMENT OF THE ISSUES

1.      Whether the District Court erred, after holding INPROTSA in contempt, by refusing to require INPROTSA to disgorge $16,373,684 in ill-gotten

revenues collected on sales of MD-2 pineapples made in violation of the Sales Injunction after entry of the District Court's Final Judgment.

2.      Whether the District Court erred, after holding INPROTSA in contempt, by refusing to require INPROTSA to disgorge $23,358,785 in ill-gotten revenues collected on sales of MD-2 pineapples in violation of the Sales Injunction between the date of Final Award and the date of the Final Judgment.

3.      Whether the District Court erred by failing to expressly hold INPROTSA's executive officers, Jorge Gurria and Manuel Gurria, in contempt for orchestrating INPROTSA's violation of the Sales Injunction.

## IV.

## STATEMENT OF THE FACTS AND COURSE OF PROCEEDINGS

### A.      Events Prior to Del Monte's Motion to Show Cause

This Court is no stranger to the parties' dispute, which has involved four separate appeals to this Court, including this one.  For brevity's sake, Del Monte will not repeat the full history of the parties' dispute leading up to Del Monte's Motion to Show Cause, which is the subject of this appeal.  Rather, Del Monte refers the Court to its April 23, 2019 opinion, *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291 (11th Cir. 2019) *cert. denied,* 140 S. Ct. 124 (2019), and highlights the following facts:

- On June 10, 2016, an arbitral Tribunal (hereinafter, "Tribunal") of the

International Chamber of Commerce issued the Final Award in favor of Del Monte and against INPROTSA.    ECF-1, Ex. 6.    The Final Award enforced the post-termination restrictive covenants of a Pineapple Sales Agreement that Del Monte bargained for in exchange for providing INPROTSA with approximately 61 million scarce and expensive "MD-2" variety pineapple seeds (worth in excess of $25 million).  *Inversiones,* 921 F.2d at 1294-95; ECF-1, 90-140.

- Summarizing the Final Award, this Court noted that the Tribunal

   awarded Del Monte specific performance, injunctive relief, damages, interest, costs, and attorney's fees. More specifically, it required INPROTSA to either return or destroy 93% of the MD-2 vegetative materials on its plantation – which the tribunal found were attributable to the seeds provided by Del Monte.  It also enjoined INPROTSA from selling 93% of its MD-2 pineapples to third parties until it complied with its obligation to destroy or return the MD-2 plant stock.[2]  ***With respect to damages, the tribunal determined that, under Florida law, Del Monte was entitled to disgorgement of the money [$26.133 million] INPROTSA received by selling the MD-2 pineapples to third parties in breach of the Agreement***.

*Inversiones*, 921 F.2d at 1296 (emphasis added).

- The District Court denied INPROTSA's petition to vacate the Final Award, ECF-24, confirmed the Final Award, ECF-47, entered Final Judgment in favor of Del Monte, ECF-52, and sanctioned INPROTSA for filing a frivolous

---

[2] The District Court referred to the Tribunal's specific performance mandate to return or destroy MD-2 plant stock as the "Destruction Injunction" and the Tribunal's permanent injunction against sales as the "Sales Injunction."   ECF-304, at 2.  Del Monte will use the same shorthand references in this brief.

petition to vacate and objections to confirmation. *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 2016 WL 10568064 (S.D. Fla. Dec. 6, 2016); ECF-161.

- This Court affirmed the District Court's rulings in all respects. *Inversiones*, 921 F.3d at 1306; *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 783 F. App'x 972, 974 (11th Cir. 2019) (affirming imposition of sanctions).

- The Costa Rican Supreme Court confirmed the Final Award on December 19, 2020. ECF-240, 240-1.

## B.    INPROTSA's Violation of the Destruction Injunction and Sales Injunction

Rather than comply with the Final Award or the Final Judgment, INPROTSA elected deliberately to violate the Sales Injunction and Destruction Injunction and wrongfully collected more than $39.7 million in sales revenues between the issuance of the Final Award and the entry of Final Judgment. ECF-136, Table 6. INPROTSA also refused to destroy or return 93% of Del Monte's MD-2 "vegetative materials existing on INPROTSA's farm." ECF-191, at 24, ¶¶ 6-9.

After the Final Award was entered, and one week before INPROTSA filed its frivolous petition to vacate the Final Award, INPROTSA entered into a series of sham agreements with Productora y Exportadora de Frutas Verduras Fruver S.A. ("Fruver"), pursuant to which INPROTSA continued to cultivate MD-2 pineapples

in violation of the Destruction Injunction and "sold its pineapples exclusively to Fruver" in Costa Rica in violation of the Sales Injunction, which in turn sold the pineapples to INPROTSA's customers, while INPROTSA received from Fruver the same income it would have received had it sold the fruit to INPROTSA's customers directly. Fruver is owned by "a close family friend of Inprotsa's officers, who purchased Fruver after being notified of the opportunity by [Jorge] Gurria Hernandez." *Id.* at 24, ¶ 11; ECF-142, at 7 n.10; ECF-137, at 6-14. INPROTSA's decision to violate the Sales and Destruction Injunctions was made knowingly by and with the approval of Jorge Gurria and Manuel Gurria. ECF-191, at 22, 26.

### C.    Del Monte Moves to Hold INPROTSA and the Gurrias in Contempt

On March 26, 2018, Del Monte moved for the entry of an order to show cause why INPROTSA, Jorge Gurria and Manuel Gurria should not be held in contempt (hereinafter, "Motion to Show Cause") for willfully violating the Destruction and Sales Injunctions and, *inter alia*, for the imposition of "a compensatory fine in the amount of INPROTSA's gross earnings from those sales." ECF-137.

INPROTSA's sales records produced in discovery showed that it made millions of dollars of MD-2 pineapple sales in violation of the Sales Injunction. INPROTSA received $23,358,785 in revenues from improper sales of pineapples in excess of 7% of production from June 2016 to May 2017 (the date of the Final Award to the date of Award confirmation) and $16,373,684 in revenues from improper sales

of pineapples in excess of 7% of production from May 2017 through September 2018 (when 93% of the MD-2 vegetative stock was destroyed). ECF-179, ¶¶ 2-3, Table 7; First R&R, at 25, ¶ 13, ECF 191. INPROTSA does not dispute – and has conceded – these sales figures. June 2, 2020 Hr'g Tr., at 55:17-24, ECF-273.

Jorge Gurria, INPROTSA's President, testified that INPROTSA was violating the Sales Injunction because INPROTSA "'needed to sell the fruit that Inprotsa was producing to comply with the commitments Inprotsa has in the operation it has in Costa Rica.'" First R&R, at 22, ECF-191 (quoting March 2018 Jorge Gurria Dep., ECF-142-4 at 244:9-23).

### D.    Del Monte's Motion to Show Cause Is Referred to the Magistrate Judge for a Report and Recommendation

On April 5, 2018, the District Court referred Del Monte's Motion to Show Cause to the Magistrate Judge. ECF-131. After conducting an evidentiary hearing, the Magistrate Judge issued a Report and Recommendation on January 24, 2019 (hereinafter, "First R&R"), ECF-191 finding, *inter alia*, that:

(i)     INPROTSA violated the Destruction and Sales Injunctions from the time the Final Award was entered and continually thereafter, First R&R, at 21; 24-25, ¶¶ 5-14, ECF-191;

(ii)    the evidence presented by Del Monte was "sufficient to show violation of the [District] Court's Final Judgment by proof that sales continued after the Court's entry of Final Judgment in violation of the sales

10

injunction," *id*. at 22;

(iii)    "Inprotsa had been making sales on pineapples since June 10, 2016," *id.* at 22;

(iv)    "from May 2, 2017 to September 30, 2018 ... Inprotsa made $16,373,684 in excess sales over the 7% maximum" allowed under the Sales Injunction, *id.* at 21;

(v)    "Inprotsa's violation of the Award constitutes contempt of the Court's Final Judgment," *id.* at 22; and,

(vi)    INPROTSA and the Gurrias should be required to show cause why they should not be held in contempt "for failing to comply with the Court's Final Judgment by making sales of MD-2 pineapples in violation of the [Sales Injunction]." *Id*. at 26.

With respect to the compensatory disgorgement fine that Del Monte requested to be imposed against INPROTSA, the Magistrate Judge rejected INPROTSA's argument "that contempt sanctions are not available … where Del Monte has not shown that it has sustained any actual losses," First R&R, at 19, ECF-191:

> ***Here, Del Monte was damaged by loss of the benefit of its bargain with Inprotsa.*** The arbitration panel found that Inprotsa was supposed to have returned or destroyed all vegetative materials following the termination of the Agreement, and, because they breached this contractual provision, Inprotsa "must now account for the monies it improperly received" (Award at ¶ 108). ***To the same extent, Inprotsa's continued sales of fruit after it was enjoined from keeping the contested fruit resulted in monies improperly received to the***

> *detriment of Del Monte.  Accordingly, Del Monte's contempt motion*
> *seeks relief available under this Court's contempt powers*.

First R&R, at 20, ECF-191 (emphasis supplied).

With regard to Del Monte's request for an award of disgorgement damages caused by INPROTSA's sale of MD-2 pineapples between the date of the Final Award (June 10, 2016) and the date of the Final Judgment (May 17, 2017), the Magistrate Judge recommended that Del Monte's request be denied:

> This Court's authority to enforce the Award's injunction provisions is rooted in the fact that it confirmed the Award and entered Final Judgment subsuming the award on May 17, 2017.  Del Monte relies on a series of cases for the proposition that a court has the discretion to enforce its judgments by awarding damages for conduct occurring after entry of an arbitral award; notably, however, none of these cases [cited by Del Monte] involve a court awarding damages for violation of an injunction that occurred prior to confirmation [of] the award and entry of final judgment....  Accordingly, the undersigned recommends denying Del Monte's request for an award of post-award damages.

First R&R, at 26, ECF-191.

### E.    The District Court Adopts the First R&R in Its Entirety

On March 18, 2019, the District Court denied the parties' objections, ECF-196, 197, and adopted the First R&R in its entirety (hereinafter, "March 18, 2019 Adoption Order"), ECF-200, including the Magistrate Judge's certified finding that INPROTSA and its officers had acted in contempt of the Final Judgment and her recommendation that INPROTSA and the Gurrias should show cause why they should not be held in contempt and sanctioned.  The District Court also adopted the

Magistrate Judge's recommendation that Del Monte's claim for an award of disgorgement damages caused by INPROTSA's violation of the Sales Injunction between the date of the Final Award and the entry of Final Judgment be denied. *Id.* at 2.

### F.    INPROTSA's and the Gurrias' Response to District Court's Order to Show Cause

On June 9, 2019, ostensibly in response to the March 18, 2019 Adoption Order, INPROTSA filed the Declaration of Jorge Gurria purporting to explain why INPROTSA and the Gurrias should not be held in contempt. ECF-209-1. In his Declaration, Gurria ratified his prior admission that INPROTSA and the Gurrias had deliberately elected to ignore the Destruction Injunction, *id.,* ¶¶ 17-26, and admitted again that they deliberately chose not to comply with the Sales Injunction for commercial reasons. *Id.*, ¶¶ 27-34. Instead, Gurria contended that the District Court did not have jurisdiction to enforce the Sales and Destruction Injunctions. *Id.,* ¶ 35.

### G.    Del Monte's Renewed Motion for Entry of Final Judgment of Contempt

On October 11, 2019, Del Monte filed a Renewed Motion for Entry of Final Judgment of Contempt (the "Renewed Motion for Final Judgment of Contempt"), ECF-229.[3] In response, INPROTSA conceded that "[t]he Court has ordered

---

[3] Del Monte's initial Motion for Entry of Final Judgment of Contempt, ECF-201, was denied as "premature." ECF-207.

INPROTSA *to show cause why it should not be held in* contempt," ECF-230, at 3 (emphasis in original), and argued, *inter alia*, that Del Monte's Renewed Motion for Final Judgment of Contempt was "equally as premature as its first motion" because Del Monte was thwarting INPROTSA's discovery attempts.   ECF-230, at 2. Specifically, INPROTSA filed two motions to compel disclosure of Del Monte's "lost profits" caused by INPROTSA's violation of the Sales Injunction.   *See* INPROTSA's Motion to Compel Discovery, ECF-212, and Motion to Compel Respondent to Produce Evidence of Actual Damages or Dismiss Its Motion to Show Cause, ECF-221.

On January 24, 2020, the Magistrate Judge denied INPROTSA's motions to compel discovery of Del Monte's lost profits as thinly veiled attempts to re-litigate the measure of the compensatory fine for INPROTSA's contemptuous conduct, which had already been ruled on by the Magistrate Judge, ECF-191, at 19-26, and adopted by the District Court, ECF-200, and ruled that Del Monte's lost profits were irrelevant since Del Monte was seeking disgorgement of INPROTSA's ill-gotten gains:

> I understand [INPROTSA's] position on what the metric of damages should be.  I anticipate that at some point the Eleventh Circuit is going to have an opportunity to decide whether I was right or wrong about it and whether Judge Moreno was right or wrong in adopting it, *but it is what has been decided in this case*.  (emphasis added).

Jan. 24, 2020 Hr'g Tr., at 18-19, ECF-235; Order Denying Motions to Compel,

ECF-244, at 1-4.

### H. Del Monte's Renewed Motion for Entry of Final Judgment of Contempt Is Referred to Magistrate Judge for a Report and Recommendation

On November 13, 2019, the District Court referred Del Monte's Renewed Motion for Final Judgment of Contempt, ECF-229, to the Magistrate Judge for a report and recommendation. ECF-232. INPROTSA did not dispute that it and the Gurrias violated the Injunctions, but instead regurgitated their already rejected arguments that the District Court lacked the jurisdiction or authority to hold INPROTSA in contempt and that the measure of any contempt fine should be Del Monte's lost profits, not disgorgement of INPROTSA's ill-gotten gains.[4] ECF-261.

On June 2 and 30, 2020, the Magistrate Judge held an evidentiary hearing to permit INPROTSA to show cause why it and the Gurrias should not be held in contempt. ECF-270, 280. INPROTSA's counsel admitted at the June 2, 2020 hearing that INPROTSA violated the Sales Injunction and collected more than $16 million in sales after the Final Judgment was entered:

> **Did INPROTSA comply with the sales injunction, no**. Was --- were $16 million of pineapples sold? **There is no evidence to the contrary**. That's why we are not hearing any evidence today because we are sort of in the realm of legal.

---

[4] INPROTSA also argued, alternatively, that Del Monte should only be entitled to INPROTSA's "lost profits," after INPROTSA's costs were deducted from its sales revenues. *Id*. at 25. But, as it did during the underlying arbitration, INPROTSA elected not to proffer any evidence of its alleged costs at the evidentiary hearings conducted by the Magistrate Judge on June 2 and 30, 2020.

June 2, 2020 Hr'g Tr., at 55:17-24, ECF-273 (emphasis supplied). Instead, INPROTSA spent its time arguing that the Destruction and Sales Injunctions were illegal, invalid, or unenforceable – arguments previously rejected by the Magistrate Judge and the District Court. First R&R, at 6-10, 17-19, ECF-191, *adopted*, March 18, 2019 Adoption Order, ECF-200.

## I.   The Magistrate Judge Issues a Report and Recommendation on Del Monte's Renewed Motion for Final Judgment of Contempt

The Magistrate Judge issued a Report and Recommendation on July 16, 2020 (hereinafter, "Second R&R"), ECF-287, on Del Monte's Renewed Motion for Final Judgment of Contempt which found (again) that INPROTSA and the Gurrias "had willfully violated the Injunctions as required by this Court's Judgment," *id.* at 6, that INPROTSA and the Gurrias failed to proffer a legally sufficient excuse why they "could not comply with this Court's Final Judgment," *id*. at 9, and recommended "[t]hat the [District] Court Order Inprotsa to Show Cause whit [sic] it should not be held in contempt for violating the Court's Final Judgment by continuing to sell pineapples that resulted from Del Monte seeds above 7% between May 2017 and April 2018." *Id.* at 15. The Magistrate Judge recommended that Del Monte be awarded $204,958.00 in attorney's fees for taking the steps necessary to stop the contemptuous conduct, *id.* at 15, and contrary to her earlier recommendation in the First R&R, recommended against requiring INPROTSA to disgorge the $16,373,684

16

in ill-gotten sales income collected in violation of the Sales Injunction after entry of the Final Judgment.  According to the Magistrate Judge, disgorgement would impermissibly "punish" INPROTSA.  *Id*. at 10-16.

**J.**    **The Parties File Objections to the Second R&R**

Both parties filed objections to the Second R&R on August 7, 2020.

Del Monte objected, ECF-291, 296, to the Second R&R for, *inter alia*, the following reasons:

(i)    The Magistrate Judge erroneously concluded Del Monte was not entitled to disgorgement because disgorgement is "punitive" in nature. Second R&R, at 13, ECF-287.

(ii)    The Magistrate Judge erroneously concluded that Del Monte was not harmed or damaged as a result of INPROTSA's contemptuous conduct. *Id.* at 12.

INPROTSA objected to the Second R&R on the grounds, *inter alia*, that the District Court never issued an order to show cause concerning contempt (despite its admission in ECF-230 that "[t]he Court has ordered INPROTSA to *show cause* why it *should not* be held in contempt") and that the District Court lacked subject matter jurisdiction to enter or enforce the Sales and Destruction Injunctions.  ECF-292.

**K.**    **The District Court Adopts, in Part, the Second R&R and Issues an Order to Show Cause to INPROTSA and the Gurrias Why They Should Not Be Held in Contempt**

The District Court adopted, in part, the Second R&R on October 30, 2020 (hereinafter, "Order Adopting in Part Second R&R"), ECF-298.  Although the

District Court stated that its March 18, 2019 Adoption Order "could be construed as an Order to Show Cause," ECF-298, at 7, it held that because "an Order to Show Cause is procedurally required, the Court defers ruling on whether disgorgement is appropriate and whether Del Monte is entitled to [attorneys'] fees until the [sic] INPROTSA has had a formal opportunity to show cause." *Id.* at 7. The District Court also rejected INPROTSA's argument that it lacked jurisdiction to enforce the Sales Injunction or issue a contempt citation. *Id.* at 9-12.

By separate order dated October 30, 2020, the District Court issued an Order to Show Cause, ECF-299, directing "[INPROTSA] and its corporate representative to show cause as to why it should not be held in contempt for its noncompliance with this Court's Order and Final Judgment by continuing to sell pineapples that resulted from Del Monte seeds above 7% between May 2017 and April 2018." *Id.* at 1.

INPROTSA filed its response to the Order to Show Cause on November 16, 2020, ECF-300, and again argued that the District Court lacked jurisdiction to hold INPROTSA in contempt. *Id.* at 2-6. Neither Jorge Gurria nor Manuel Gurria filed a response to the Order to Show Cause.

## L.    The District Court Holds INPROTSA in Contempt

Ten months later, on August 10, 2021, the District Court entered an Order Adopting Remaining Portions of Magistrate Judge Louis's July 16, 2020 Report and Recommendation and Order Finding Petitioner in Contempt (hereinafter, "Contempt

Order"), ECF-304, 306.  The District Court rejected INPROTSA's arguments that the District Court lacked jurisdiction to enforce the Sales Injunction or to hold INPROTSA or its officers in contempt.  *Id.* at 4-9.  Moreover, the District Court found that INPROTSA failed to demonstrate good cause why it should not be held in contempt:

> INPROTSA has advanced no evidence that it acted diligently in attempting to destroy the pineapples or sell them to Del Monte, in fact the opposite has been shown: INPROTSA knew of the injunctions, knew that it had been ordered to destroy the pineapples or sell them only to Del Monte, and chose instead to farm them as it normally would and sell them to third-party Fruver in hopes that it would win at the appellate level.

*Id.* at 9-10.

Notably, despite ordering both INPROTSA and the Gurrias to show cause why they should not be held in contempt, ECF-299, at 1, the District Court's Contempt Order was silent as to whether the Gurrias, who directed INPROTSA to violate the injunctions, should also be held in contempt.

With regard to Del Monte's request that INPROTSA be required to disgorge the $16,373,684 in ill-gotten revenues collected from MD-2 pineapple sales in violation of the Sales Injunction after entry of Final Judgment, the District Court denied that request, holding:

> [T]he Court adopts the [July 16, 2020] Report and Recommendation [ECF-287] and declines to sanction INPROTSA by awarding damages exceeding $16 million.  To rule otherwise would contravene the Supreme Court's instruction in *Liu* [*v. S.E.C.*, 140 S. Ct. 1936 (June 22,

2020)], which states that "a wrongdoer should not be punished by paying more than a fair compensation to the person wronged."

ECF-304, at 12. The District Court awarded Del Monte attorneys' fees of $204,958. *Id.* at 15.

### M.    Del Monte Files Its Notices of Appeal

Thereafter, Del Monte commenced this appeal. ECF-305, 307.

### V.

### STATEMENT OF THE STANDARD OR SCOPE OF REVIEW

The Court must affirm the Contempt Order unless it finds that the District Court abused its discretion. *F.T.C. v. Natl. Urological Group, Inc.*, 786 F. App'x 947, 953-54 (11th Cir. 2019). Underlying factual findings are reviewed for clear error. Legal rulings are review *de novo*. *Id.* The Court reviews a sanction for civil contempt for abuse of discretion. *Id.* A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous. *Id.* A "district court's decision that it does not have the legal authority to award a particular type of contempt sanction" is subject to *de novo* review. *Tom James Co. v. Morgan*, 141 F. App'x 894, 899 (11th Cir. 2005). The district court's interpretation of the Federal Arbitration Act is a legal question that is reviewed *de novo*. *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017).

20

## VI.

## SUMMARY OF ARGUMENT

Despite holding that INPROTSA and the Gurrias violated the District Court's Final Judgment and the Sales and Destruction Injunctions adopted therein, the District Court declined to impose a compensatory fine or to require INPROTSA to disgorge any of the $39.7 million in ill-gotten sales income collected in violation of the Sales Injunction. The District Court reasoned that disgorgement would "punish" INPROTSA and that Del Monte did not show that it suffered an actual pecuniary loss.

The District Court erred by ignoring binding precedent from this Court and the Supreme Court. First, in a contempt proceeding for violation of an injunction, disgorgement is a proper remedy and is considered "remedial in nature" as opposed to punishment.

Second, Del Monte was not required to prove that it suffered an actual pecuniary loss to be entitled to collect a compensatory fine. Rather, to unlock the door to the remedy of disgorgement, Del Monte need only show that it was injured by INPROTSA's injunction violations and contemptuous conduct. The District Court expressly found that Del Monte was harmed and that it lost the benefit of its bargain when INPROTSA violated the Sales Injunction.

Third, INPROTSA, a "conscious wrongdoer," is not entitled to a setoff of its

21

expenses against the revenues collected on MD-2 pineapple sales made in violation of the Sales Injunction. Regardless, as it did in the underlying arbitration, INPROTSA failed to satisfy its burden of presenting evidence to the District Court of any expenses incurred to justify a setoff of any kind.

Fourth, when an arbitral award is confirmed and a final judgment is entered thereon, the final judgment subsumes the arbitral award and fixes the rights of the parties as of the date of the arbitral award, not as of the date of the final judgment. Because the District Court found that INPROTSA made sales in violation of the Sales Injunction from the date of the Final Award, the District Court should have required INPROTSA to not only disgorge the approximately $16.37 million in ill-gotten sales revenue collected *after* the Final Judgment, but also $23.3 million in ill-gotten sales revenue collected between *the date of the Final Award and the date of the Final Judgment*.

Fifth, the District Court expressly found that the Gurrias aided and abetted the violations of the Destruction and Sales Injunctions and ordered them to show cause why they should not be held in contempt. The Gurrias failed to show cause, but the District Court's Contempt Order is silent as to them. Because the Gurrias directed INPROTSA's contemptuous actions, they too should be included in, and held jointly and severally liable under, the District Court's Contempt Order. The District Court's failure to expressly hold the Gurrias in contempt was error.

# VII.

# ARGUMENT

## A.    Disgorgement of INPROTSA's Ill-Gotten Gains Is a Proper Compensatory Remedy for Violation of the Sales Injunction

Even though INPROTSA (i) deliberately violated the Sales and Destruction Injunctions, (ii) purposefully "chose not to destroy the pineapples, and chose to sell them to a third party," Contempt Order, at 10, ECF-304 & 306, and (iii) collected more than $39 million from pineapple sales that it was enjoined from making, ECF-179, ¶¶ 2-3, Table 7, the District Court denied Del Monte's request that INPROTSA be required to disgorge any of its ill-gotten gains as a compensatory fine.

The District Court gave two reasons for denying the request for disgorgement:

> *First*, disgorgement of revenues is not a proper remedy for the violation of an injunction because, *inter alia*, disgorgement would "punish" INPROTSA, citing *Liu v. S.E.C.,* 140 S. Ct. 1936 (2020).  Contempt Order, at 14, ECF-304.

> *Second,* because "Del Monte [did] not show by clear and convincing evidence that it suffered losses or that INPROTSA profited and would be keeping its ill-gotten gains, the Court declines an award of disgorgement to Del Monte."  *Id*.

Neither of the District Court's explanations for denying disgorgement withstand scrutiny.

### 1.    Disgorgement Is a Recognized Contempt Remedy

Civil contempt is the penalty for disobeying an injunction. *Reynolds v.*

*Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000). "Courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Citronelle-Mobile Gaterhin, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991). "The sanctions entered in civil contempt proceedings may be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *F.T.C. v. Garden of Life, Inc.*, 516 F. App'x 852, 860 (11th Cir. 2013). "A court's civil contempt power is measured "solely by the *requirements of full remedial relief.*" *U.S. v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (emphasis added).

Despite what the District Court held, disgorgement is a recognized contempt remedy for violation of an injunction. The U.S. Supreme Court has held that "in a proceeding for civil contempt for disobedience to an injunction..., the profits derived [by the contemnor] from the violation of the injunction are recoverable." *Leman v. Krentler-Arnold Hing Last Co.,* 284 U.S. 448, 456 (1932). Consistent with *Leman*, this Court has held on multiple occasions that disgorgement is a proper contempt remedy when an injunction has been violated. *Tom James Co. v. Morgan*, 141 F. App'x 894, 896, 899 (11th Cir. 2005) ("To the extent that the district court did not think that the disgorgement of Morgan's profits was within its power to award as a civil contempt sanction, the district court erred."); *Abbott Labs. v. Unlimited Beverages, Inc.*, 218 F.3d 1238, 1242 (11th Cir. 2000) ("the court may disgorge the

party in contempt of any profits it may have received."); *F.T.C. v. Leshin,* 618 F.3d 1221, 1237 (11th Cir. 2010) ("[t]he District Court did not abuse its discretion in ordering disgorgement of gross receipts instead of profits" as a contempt sanction for defendant's violation of injunction); *Howard Johnson Co., Inc. v. Khimani*, 892 F.2d 1512, 1521 (11th Cir. 1990) (affirming disgorgement contempt sanction for injunction violation).[5]  In *Tom James*, this Court reversed the district court's order refusing to impose a disgorgement remedy when the defendant violated an injunction prohibiting sales to competitors.  In *Abbott Labs.*, where the defendant violated an injunction prohibiting sales, this Court held that the district court "may disgorge the party in contempt of any profits it may have received."  In *Leshin*, the defendant violated an anti-sales injunction, and this Court ratified the district court's order requiring disgorgement of gross revenues without setoff for expenses incurred. In *Howard Johnson,* the contemnor's injunction violations resulted in a

---

[5] The district courts in this Circuit routinely order disgorgement when parties violate anti-sales injunctions. *E.g., HPC US Fund 1, LP v. Wood*, 2015 WL 11667590, *1-7 (S.D. Fla. Feb. 23, 2015) (defendant found in contempt for violating anti-sales injunction ordered to disgorge "the proceeds of the sold property"); *Clairson Int'l Corp. v. Master Tool Co., Inc.*, 1986 WL 84374, *3 (S.D. Fla. Feb. 4, 1986) (ordering defendant in violation of anti-sales injunction to disgorge gross sales revenue collected); *Talk Fusion, Inc. v. Burling*, 2016 WL 4527361, *3-4 (M.D. Fla. Aug. 10, 2016) (ordering defendant in contempt of injunction enjoining recruiting activities to "disgorge any commissions or other money earned"), *adopted*, 2016 WL 4507981 (M.D. Fla. Aug. 29, 2016); *F.T.C. v. RCA Credit Servs., LLC*, 2011 WL 5924969, *5 (M.D. Fla. Oct. 5, 2011) (ordering contemnor to disgorge its "gross receipts for sales made in violation of the Final Judgment and Permanent Injunction").

disgorgement of wrongfully earned income.

Other Circuits likewise recognize disgorgement as a remedy for injunction violations. *E.g.*, *Manhattan Indus.*, *Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989) (emphasis supplied) ("we hold that Sweater Bee is entitled to those profits derived by Bayard from the unlawful sales of Bayard's Kimberly merchandise [when] Bayard was in civil contempt of the district court's consent judgment. Of course, by 'profits' we mean net profits, and note that the burden is on the contemnor "to prove any deductions for its costs from the gross revenues attributable to its contempt.""); *Stryker Corp. v. Prickett,* 2016 WL 4433679, *12 (W.D. Mich. Jul. 22, 2016) (defendant who violated injunction against sales ordered to disgorge gross sales, less costs incurred, and "[t]he burden shall be on defendants to prove actual costs."), *adopted*, 2016 WL 4415041, *1 (W.D. Mich. Aug. 19, 2016); *Garmon Corp. v. Healthypets, Inc.*, 2018 WL 4944865, *1-3 (C.D. Cal. Oct. 10, 2018) (ordering defendant who violated anti-sales injunction to "turn over all revenue gained from [plaintiff] Garmon product sales since the entry of the Preliminary Injunction."); *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 1990 WL 106846, *8-9 (S.D.N.Y. Jul. 23, 1990) (ordering defendant who violated anti-sales injunction to disgorge "ill gotten gains").

This Court has held that disgorgement of ill-gotten gains acquired through the violation of an injunction is "remedial in nature," not punitive:

> The order to disgorge all fees collected in violation of the injunction is a civil sanction for contempt. The sanction to disgorge all fees collected from post-order contracts and from continuing to collect from existing clients *is remedial in nature*.

*Leshin*, 618 F.3d at 1239 (emphasis supplied); *see also id.* ("It is well settled that "[a] contempt fine ... is considered civil and remedial if it ... compensate[s] the complainant for losses sustained."). "A disgorgement order is not a punitive measure; it is intended primarily to prevent unjust enrichment." *F.T.C. v. Leshin*, 2011 WL 13134194, *5 (S.D. Fla. Nov. 15, 2011), *adopted*, 2012 WL 12892784 (S.D. Fla. Feb. 16, 2012), *aff'd,* 719 F.3d 1227 (11th Cir. 2013); *Tom James Co.,* 141 F. App'x 894 at 899 (disgorgement is "within [district court's] power to award as a civil contempt sanction"); *S.E.C. v. Liu*, 851 F. App'x 665, 669 (9th Cir. 2021) (following remand from Supreme Court, holding "disgorgement award ... is an equitable remedy, not a penalty").[6]

The District Court nevertheless held that the U.S. Supreme Court's opinion in *Liu v. S.E.C.*, 140 S. Ct. 1936 (2020), precludes disgorgement in the case at bar, but *Liu* does no such thing. To the contrary, *Liu* affirmed that disgorgement remains a "mainstay" of U.S. equity jurisprudence. *Id.* at 1943. The issue under review in *Liu*

---

[6] "The Restatement does not consider 'disgorgement of wrongful gain' to be 'a punitive remedy' because 'the wrongdoer who is deprived of an illicit gain is ideally left in the position he would have occupied had there been no misconduct.'" *Marcus v. Allied World Ins. Co*., 384 F. Supp. 3d 115, 120 (D. Me. 2019) (quoting Restatement (Third) of Restitution and Unjust Enrichment (2010) § 51 cmt. k).

was whether § 78u(d)(5) of the Securities Exchange Act of 1934 "authorizes the SEC to seek disgorgement beyond a defendant's net profits from wrongdoing." *Id.* at 1942. After concluding that § 78u(d)(5) does, in fact, permit disgorgement, the Supreme Court then held that – *subject to an important exception discussed below*, *see infra* Section VII(A)(3) – a disgorgement award typically may not exceed the wrongdoer's gross profits less legitimate expenses actually incurred:

> Courts may not enter disgorgement awards that exceed the gains "made upon any business or investment, when both the receipts and payments are taken into the account." *Goodyear*, 9 Wall., at 804; *see also* Restatement (Third) § 51, Comment *h*, at 216 (reciting the general rule that a defendant is entitled to a deduction for all marginal costs incurred in producing the revenues that are subject to disgorgement). Accordingly, courts must deduct legitimate expenses before ordering disgorgement under § 78u(d)(5).

*Liu,* 140 S. Ct. at 1949-50. The *Liu* Court remanded the case so the district court could determine whether the wrongdoer's revenues should be reduced by any legitimate expenses incurred. *Id*. at 1950.[7]

*Liu* cited approvingly to Section 51 of the Restatement (Third) of Restitution and Unjust Enrichment (2010), which enumerates two different measures of relief for wrongful enrichment:

- Section 51(2) of the Restatement provides for restitution:

The value for restitution purposes of benefits obtained by the

---

[7] On remand, the district court in *Liu* ordered disgorgement after setting off legitimate expenses and disallowing illegitimate expenses. *S.E.C. v. Liu*, 2021 WL 2374248, *5 (C.D. Cal. June 7, 2021).

misconduct of the defendant, culpable or otherwise, *is not less than their market value*. (emphasis added).[8]

• Section 51(4) of the Restatement provides for the alternative remedy of disgorgement:

> *Unless the rule of subsection (2) imposes a greater liability*, the unjust enrichment of a conscious wrongdoer, or of a defaulting fiduciary without regard to notice or fault, is the net profit attributable to the underlying wrong. The object of restitution in such cases is to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty. Restitution remedies that pursue this object are often called "disgorgement" or "accounting." (emphasis added).

The *Liu* Court noted that "[n]o matter the label, this 'profit-based measure of unjust enrichment,' Restatement (Third) [of Restitution] § 51, Comment *a*, at 204, reflected a foundational principle: '[I]t would be inequitable that [a wrongdoer] should make a profit out of his own wrong,' *Root v. Railway Co.*, 105 U.S. 189, 207, 26 L.Ed. 975 (1882)." *Liu*, 140 S. Ct. at 1943 (brackets in original).

This Court in *Guyana Tel. & Tel. Co., Ltd v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1249 (11th Cir. 2003), addressed restitution under Restatement § 51(2) and disgorgement under Restatement § 51(4) in a situation, much like the instant case, where defendants "wrongfully appropriated" from plaintiff long distance telephone minutes with a fair market resale value of $993,791. The Court,

---

[8] INPROTSA's counsel conceded that the MD-2 pineapples wrongfully harvested and sold by INPROTSA after the Final Judgment and while the Sales Injunction was in effect totaled $16,373,684. June 2, 2020 Hr'g Tr., at 55:17-24, ECF-273; *see also* ECF-179, at Table 13 (Gannon Supp'l Decl.).

reversing the district court, ordered that $993,791 in gross sales revenues be disgorged:

> In cases of wrongful enrichment, a plaintiff whose goods or services were obtained by a conscious wrongdoer generally has two available remedies: compensatory damages or restitution. When the plaintiff elects restitution, the plaintiff can either recover the goods themselves or the fair market value of the transferred goods and services. *** ***Furthermore, if the goods have been sold by the tortfeasor, the plaintiff may recover either the fair market value of the goods and services (restitutionary remedy) or the proceeds of the sale (disgorgement remedy), <u>and the plaintiff is entitled to the higher</u>***.

*Guyana*, 329 F.3d at 1249 (emphasis added) (citations omitted).

The District Court held *Guyana* to be inapposite because "*Guyana* ... was not a contempt proceeding, but rather a Florida Deceptive and Unfair Trade Practices [FDUTPA] Act case, where the court was deciding on a legal remedy, not an equitable one." Contempt Order, at 13, ECF-304. The District Court misread *Guyana*. The lower court in *Guyana* dismissed the FDUTPA claim and this Court affirmed the FDUTPA dismissal. *Guyana*, 329 F.3d at 1247. The FDUTPA claim, therefore, played no part in this Court's analysis of disgorgement. Instead, this Court determined that the plaintiff was entitled to disgorgement because "this is a case of wrongful enrichment" under § 51 of the Restatement. *Guyana*, 329 F.3d at 1245 n.3; *see also Montage Grp., Ltd. v. Athle-Tech Computer Sys., Inc.,* 889 So. 2d 180, 196 (Fla. 2d DCA 2004) (following *Guyana*, holding disgorgement proper remedy under Florida law for wrongful enrichment).

30

## 2. *F.T.C. v. Leshin* Authorizes Disgorgement

Although the *Leshin* Court ordered disgorgement of gross revenues as a compensatory fine for the defendants' contempt, the Magistrate Judge concluded that *Leshin* is "not factually analogous to the case at hand" because "the contempt defendants [in *Leshin*] had illicitly taken compensation from consumers and thus ordered that the funds they received from the consumers be disgorged to compensate the consumers based on the consumers actual losses." Second R&R, at 12. The Magistrate Judge felt that Del Monte was not entitled to disgorgement because "Del Monte does not seek to recoup monies it paid, nor otherwise evidenced its harm by the measure Inprotsa was paid." *Id.* The District Court adopted this explanation. *See* Contempt Order, at 12, ECF-304 ("Regardless of how one reads the sales injunction, Del Monte did not pay monies to INPROTSA, which should now be returned. That was the factual scenario presented in *Leshin,* which is not present here.").

The Magistrate Judge stated that, unlike in *Leshin*, "Del Monte never paid Inprotsa monies which must now be disgorged, rather it gave Inprotsa pineapple seeds so that Inprotsa could grow the pineapples and sell them back to Del Monte." Second R&R, at 12. But the MD-2 seeds that Del Monte gave INPROTSA – like the fees paid to defendants in *Leshin* – were immensely valuable – worth millions of dollars – without which INPROTSA could not cultivate MD-2 pineapples, a new

variety to which INPROTSA had no access.  Final Award, ECF-6-4, at 6.  In exchange for the valuable seeds, INPROTSA agreed to post-expiration restrictive covenants requiring INPROTSA to return or destroy all of Del Monte's valuable MD-2 vegetative material (not "sell them back" as the Magistrate Judge mistakenly stated) grown from the seeds provided and, most importantly, prohibiting INPROTSA's sale of MD-2 pineapples grown from the seeds to third persons.  *Id*. at 6-7.  INPROTSA's failure to abide by those covenants led directly to the arbitrators' disgorgement award and the imposition of the Sales Injunction and Destruction Injunction, *id*., at 11-12, 47-48.

INPROTSA's retention of the "fruits" of those seeds (and the millions of dollars in revenues illegally collected from their sale) after being enjoined by the Tribunal and the District Court *not* to sell pineapples is no different than the *Leshin* defendants' receipt of investor fees after being enjoined not to collect them.  The *Leshin* defendants were forced to disgorge that which they had no right to receive.  So should INPROTSA.  For these reasons, *Leshin* is factually on point and fully supports an award of disgorgement of INPROTSA's revenues derived from prohibited sales.  Moreover, even if there are factual differences between *Leshin* and the instant case, nothing in *Leshin* or this Court's other contempt cases hints that disgorgement is not otherwise a proper contempt remedy available to compensate Del Monte who has been victimized by INPROTSA's flagrant, multi-year injunction

violations.

### 3.    INPROTSA Must Disgorge Gross Revenues with No Setoff For Expenses Incurred

Although a contemnor's disgorgement liability is ordinarily limited to the net profits collected, *Liu* noted the well-established exception that a conscious wrongdoer is obligated to disgorge gross revenues *with no setoff for expenses* "when the entire profit of a business or undertaking results from the wrongdoing." *Liu,* 140 S. Ct. at 1945 (citation omitted):

> The Court has carved out an exception when the "entire profit of a business or undertaking" results from the wrongful activity. *Root*, 105 U.S., at 203. In such cases, the Court has explained, the defendant "will not be allowed to diminish the show of profits by putting in unconscionable claims for personal services or other inequitable deductions."

*Id*.

> It is true that when the "entire profit of a business or undertaking" results from the wrongdoing, a defendant may be denied "inequitable deductions" such as for personal services. *Root*, 105 U.S. at 203. But that exception requires ascertaining whether expenses are legitimate or whether they are merely wrongful gains "under another name." *Goodyear*, 9 Wall. at 803. Doing so will ensure that any disgorgement award falls within the limits of equity practice while preventing defendants from profiting from their own wrong. *Root*, 105 U.S. at 207.

*Id.* at 1950.

This Court has recently recognized the same exception. In *U.S. Commodity Futures Trading Comm'n v. Tayeh*, 848 F. App'x 827 (11th Cir. 2021), this Court noted: "Concerning the issue of deducting business expenses from a disgorgement

calculation, ***we have held that defendants in a disgorgement action are not entitled 'to deduct costs associated with committing their illegal acts***.'"  *Id.* at 829 (emphasis supplied) (quoting *F.T.C. v. Wash. Data Res., Inc.*, 704 F.3d 1323, 1325 (11th Cir. 2013)).  Expressly acknowledging the Supreme Court's holding in *Liu*, the *Tayeh* Court affirmed the district court's refusal to reduce a disgorgement order by the amount of the contemnor's claimed expenses because the contemnor "failed to provide concrete and credible evidence to demonstrate the amount of money spent on any of the alleged business expenses or whether any of the business expenses were legitimate."  *Tayeh*, 848 F. App'x at 830;[9] *e.g., U.S. v. RaPower-1, LLC*, 960 F.3d 1240, 1251 (10th Cir. 2020) (affirming district court's holding that defendant "will not be allowed any credit of operating expenses to carry[] on the business that is the source of the profit subject to disgorgement."); *S.E.C. v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1115 (9th Cir. 2006) ("goal of depriving a wrongdoer of unjust enrichment" would not be served if defendants were allowed "to escape disgorgement by asserting that expenses associated with this fraud were legitimate.").

The Restatement likewise notes that where a conscious wrongdoer acts

---

[9] This Court in *Leshin* also held that "disgorgement of gross receipts instead of profits" is a proper compensatory fine for injunction violations. *Leshin,* 618 F.3d at 1237; *see also F.T.C. v. RCA Credit Servs., LLC*, 2011 WL 5924969, *5 (M.D. Fla. Oct. 5, 2011) (ordering disgorgement of "gross receipts" for injunction violation).

willfully and in bad faith to violate a person's rights, ***the conscious wrongdoer is obligated to disgorge gross sale proceeds, <u>not</u> net profits***:

> A conscious wrongdoer or a defaulting fiduciary may be allowed a credit for money expended in acquiring or preserving the property or in carrying on the business that is the source of the profit subject to disgorgement. ***By contrast, such a defendant will ordinarily be denied any credit for contributions in the form of services, or for expenditures incurred directly in the commission of a wrong to the claimant***.

Restatement § 51(5)(c) (emphasis added). Illustrations 17 and 20 to Restatement § 51 reflect that conscious wrongdoers, like INPROTSA, who convert and sell crops to which they have no legal right are required to disgorge the *gross sale proceeds* received, i.e., they are *not* entitled to *any* setoff for expenses incurred to produce the crops.[10] After entry of the Final Award and its twin injunctions, INPROTSA had no

---

[10] Illustration 17 states:

> A enters B's land as a conscious trespasser and removes standing timber having a stumpage value of $5,000. By his own labor or at his own expense, A causes the timber to be felled, hauled, sawn, and milled, ultimately receiving $50,000 in cash from the sale of finished veneer. A's liability to B in restitution is $50,000 without deduction. *To allow a credit for the value of A's services or expenses would to that extent impose a forced exchange, requiring B not only to pay for logging services for which he did not contract but to acquire them from a thief.* (emphasis added).

Illustration 20 states:

> Tenant plants millet in June; his lease expires in August; Landlord harvests the crop in September at a cost of $10,000 and sells it for $50,000. Tenant sues Landlord in restitution, alleging conversion of

possessory rights in 93% of the MD-2 plant stock and MD-2 pineapples growing on its plantation. INPROTSA's decision to harvest and sell MD-2 pineapples to which it had no possessory right is tantamount to the thefts of timber and millet depicted in Illustrations 17 and 20.

Even if Del Monte were only entitled to recoup INPROTSA's net profits, the burden fell on INPROTSA – *not* Del Monte – to prove that it actually incurred legitimate expenses as a setoff against revenues,[11] but INPROTSA failed to proffer any evidence of its expenses at any of the three evidentiary hearings conducted before the Magistrate Judge. The "burden is on the contemnor to prove any deductions for its costs from the gross revenues attributable to its contempt." *Manhattan Indus.*, 885 F.2d at 5; *Tayeh*, 848 F. App'x at 830 (this Court holding that because defendant "failed to provide concrete and credible evidence to demonstrate the amount of money spent on any of the alleged business expenses or

---

the millet crop. The court decides the controversy—a close question under local property law—in favor of Tenant. Because Landlord is not regarded as a conscious wrongdoer, his harvesting expenses of $10,000 are properly deducted in determining his liability for net profits of $40,000. *(If Tenant's crop had been harvested and sold by a thief, the thief would be liable for $50,000 in proceeds without deduction.)* (emphasis added).

[11]  "To assist the court in arriving at the appropriate award for disgorgement of profits, the plaintiff is required to prove defendant's sales only, while the defendant has the burden of proving all elements of cost or deduction claimed." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013) (quotations omitted).

whether any of the business expenses were legitimate, ... we affirm the district court's determination of the disgorgement amount"); *Stryker Corp.,* 2016 WL 4433679, *12 ("burden shall be on defendants to prove actual costs"), *adopted*, 2016 WL 4415041, *1 (W.D. Mich. Aug. 19, 2016) (ordering defendant to disgorge gross profits, less costs that defendant had burden to prove).

Because INPROTSA deliberately elected not to proffer at the evidentiary hearings below any evidence of its alleged expenses incurred to generate any of the revenues from the sale of its MD-2 pineapple production either before or after the Final Judgment, it waived any right to set off expenses against gross revenues collected in violation of the Sales Injunction.   *E.g., S.E.C. v. AmeriFirst Funding, Inc.,* 2008 WL 1959843, *6 (N.D. Tex. May 5, 2008) ("the court need not determine whether this award ought to be reduced for legitimate business expenses, because Hess Financial has failed to carry its burden of showing that it applied some of the $8,472,681.60 to legitimate business expenses"); *S.E.C. v. Luna*, 2014 WL 2960451, *7 (D. Nev. Jun. 27, 2014) ("Although the Luna Defendants contend the disgorgement amount should be offset by reasonable business expenses, the Luna Defendants present no evidence of any such expenses.  The Luna Defendants therefore have not met their burden of establishing the SEC's calculation is not a reasonable approximation of their ill-gotten gains."); *S.E.C. v. Fowler*, 6 F.4th 255, 267 (2d Cir. 2021) (declining to remand where contemnor "failed to identify any

additional 'legitimate' business expenses that, consistent with *Liu*, should have been deducted from an otherwise reasonable disgorgement amount").

> **4.    Because Del Monte Showed that It Was Harmed by INPROTSA's Violation of the Sales Injunction, Disgorgement Was Proper**

The District Court also declined to grant a disgorgement remedy to Del Monte because, in its view, "Del Monte [did] not show by clear and convincing evidence that it suffered losses or that INPROTSA profited and would be keeping its ill-gotten gains, ...." Contempt Order, at 14, ECF-304; *see also id.* ("The record evidence does not establish by clear and convincing evidence how Del Monte was damaged. It only establishes that during the relevant period INPROTSA had revenues of over $16 million, and Del Monte has not met its burden to show that INPROTSA profited."). The District Court's holding not only ignored its prior order finding that Del Monte has been harmed by INPROTSA's injunction violations, but it misapprehended Del Monte's burden in a contempt proceeding.

The Magistrate Judge expressly found in its First R&R that Del Monte had, in fact, suffered an injury caused by INPROTSA's contemptuous violation of the Sales Injunction:

> ***Del Monte was damaged by loss of the benefit of its bargain with Inprotsa.*** The arbitration panel found that Inprotsa was supposed to have returned or destroyed all vegetative materials following the termination of the Agreement, and, because they breached this contractual provision, Inprotsa "must now account for the monies it improperly received" (Award at ¶ 108). ***To the same extent, Inprotsa's***

> *continued sales of fruit after it was enjoined from keeping the*
> *contested fruit resulted in monies improperly received to the*
> *detriment of Del Monte.*

First R&R, at 20, ECF-191 (emphasis added). The District Court adopted this

finding. *See* March 18, 2019 Adoption Order, at 1, ECF-200. Moreover, it cannot

be seriously doubted that Del Monte was harmed by INPROTSA's injunction

violations.

The District Court's prior finding of injury to Del Monte unlocked the door to

a disgorgement remedy. Although a contempt sanction "must be based on proof of

the complainant's actual loss," *In re Chase & Sanborn Corp.*, 872 F.2d 397, 401

(11th Cir. 1989), Del Monte did not have to prove that it suffered a "pecuniary" or

"monetary" loss to be entitled to disgorgement of INPROTSA's ill-gotten gains

derived from sales made in admitted violation of the Sales Injunction. The

imposition of a compensatory fine is not "dependent on a demonstration of 'actual

***pecuniary*** loss.'" *Manhattan Indus.*, 885 F.2d at 5 (emphasis supplied) (quoting

*Leman,* 284 U.S. at 456). In fact, the Supreme Court in *Leman* expressly rejected

the notion that the victimized party must prove it was monetarily injured by a

contemnor's injunction violation:

> There is no question here that the respondent had made profits through
> the infringing sales in violation of the injunction, and the amount of the
> profits was ascertained, but the appellate court held that the petitioners
> were limited to the damages caused by such sales and that no damages
> had been shown. We think that the court erred in imposing this
> limitation.

*Leman*, 284 U.S. at 455.  The Second Circuit has explained that disgorgement of a contemnor's ill-gotten gains is a viable remedy in civil contempt proceedings, even when a plaintiff cannot demonstrate actual pecuniary loss

> Contempt sanctions are to be imposed once the plaintiff has proved that he has suffered harm because of a violation of the terms of an injunction, but, under a theory of unjust enrichment, ***a contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury, much less proof that any such injury approximated in amount the defendant's profits.*** This is because an award based on the defendant's profits, resting upon principles of unjust enrichment, focuses on the defendant's wrongdoing, not on damage to the plaintiff.

*Manhattan Indus.,* 885 F.2d at 6 (citations and quotations omitted; emphasis added); *see also ePlus Inc. v. Lawson Software, Inc.,* 946 F. Supp. 2d 449, 454 (E.D. Va. 2013) ("Disgorgement of profits remains a viable remedy in civil contempt proceedings, even when a plaintiff cannot demonstrate 'actual pecuniary' loss.").

Indeed, this Court in *Abbott Labs.* and *Howard Johnson* has emphasized that the right to disgorgement does not hinge on whether the victim "suffered any [monetary] damages" or "pecuniary loss," but on whether the victim has been injured by the defendant's contemptuous conduct:

> UBI next argues that, in the light of their immediate compliance with the court's order and Abbott's failure to show that it had suffered any damages, the sanctions imposed were overly harsh and penal, amounting to an abuse of discretion. *** ***Abbott need show no actual damage in this case, since the likelihood of confusion was already established in the 1994 consent judgment.*** *** ***Where a plaintiff's harm is difficult to calculate, the court may disgorge the party in contempt of any profits it may have received***.

*Abbott Labs.*, 218 F.3d at 1242 (emphasis added); *Howard Johnson*, 892 F.2d at 1521 (affirming disgorgement contempt sanction and holding that "Supreme Court [in *Leman*] has held that profits may be included as part of compensatory relief *despite the absence of a showing of pecuniary loss*") (emphasis added).

The Supreme Court in *Leman* has held a contemnor's profits are "an equivalent or a substitute for legal damages" when the victim's damages have not been shown and are recoverable "not by way of punishment but to insure full compensation to the party injured." *Leman,* 284 U.S. at 455-56; *Leshin*, 618 F.3d at 1239 (principles of restitution permit the complainant's losses to be measured by the wrongdoer's ill-gotten gain). The victimized party need only provide a "reasonable approximation" of the amount to be disgorged. *S.E.C. v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). "Exactitude is not a requirement; so long as the measure of disgorgement is reasonable, any risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.*

It is undisputed that Del Monte was injured by INPROTSA's admitted violations of the Sales Injunction. Under *Leman*, *Abbott Labs., Howard Johnson* and the other cases cited above, disgorgement is a proper contempt remedy.

### 5.    The Contempt Order Should Be Reversed with Directions to Award Disgorgement

By ignoring the binding Eleventh Circuit precedent cited above and

misreading *Liu* to prohibit disgorgement, the District Court failed to recognize that disgorgement is a compensatory remedy available to victims of conscious wrongdoers who intentionally violate injunctions. Disgorgement is not punitive. The uncontroverted evidence shows that after the entry of Final Judgment INPROTSA pocketed $16,373,684 in ill-gotten sales revenue in violation of the Sales Injunction which it used to operate its plantation so that it could sell even more pineapples – *all in continuous violation of the Sales Injunction*. INPROTSA also collected an additional $23,358,785 in revenues between the date of the Final Award and the Final Judgment from sales that violated the Sales Injunction.

The District Court's refusal to order disgorgement effectively gutted the Sales Injunction, nullified the Final Award that the District Court and this Court have confirmed, and rewarded a conscious wrongdoer. The District Court's Contempt Order should be reversed with instructions to enter a judgment of disgorgement awarding Del Monte $16,373,684 for INPROTSA's illegal sales made after the Final Judgment was entered.

### B. Del Monte Is also Entitled to a Disgorgement Award for Wrongful Sales between the Date of the Final Award and the Date the Final Judgment Was Entered

Del Monte's Motion to Show Cause requested the District Court, either under its contempt powers, inherent authority, or its statutory authority under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), to enforce the Final Award and Final

42

Judgment by requiring INPROTSA to disgorge $23,358,785 in sales revenues collected in violation of the Sales Injunction between issuance of the Final Award (June 10, 2016) and the Final Judgment (May 17, 2017).  The Magistrate Judge recommended that the District Court deny Del Monte's request, First R&R, at 25-26, ECF-191, which the District Court adopted.  March 18, 2019 Adoption Order, at 2, ECF-200 (the "Court will not award the [Del Monte] damages for violations of the arbitral award pre-dating the Court's entry of Final Judgment.").  The District Court's ruling was erroneous as a matter of law.

Once an arbitral award is confirmed by a district court as provided in 9 U.S.C. § 13, the award is transformed into a binding federal court judgment "as if it had been rendered" by the district court:

> The judgment shall be docketed as if it was rendered in an action.  The judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.

9 U.S.C. § 13.  This Court has held that "a judgment confirming an arbitration award, once entered, has the same force and effect as a judgment in a standard civil action and *is subject to all the provisions of law relating to those judgments.* 9 U.S.C. § 13." *AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc.*, 579 F.3d 1268, 1272 (11th Cir. 2009) (emphasis in original); *Parsons & Whittemore Alabama Mach. and Services Corp. v. Yeargin Const. Co., Inc.*, 744 F.2d 1482, 1484 (11th

Cir. 1984) ("once the court enters its judgment [confirming arbitral award], it has the same effect as any other judgment recovered following a civil trial").

"Once confirmed, [arbitral] awards become enforceable court orders, and, when asked to enforce such orders, a court is entitled to require actions to achieve compliance with them." *Zeiler v. Deitsch*, 500 F.3d 157, 170 (2d Cir. 2007). "A district court should enforce an arbitration award as written – ***to do anything more or less would usurp the [arbitral] tribunal's power to finally resolve disputes and undermine the pro-enforcement policies of the New York Convention***." *Wartsila Finland OY v. Duke Capital LLC*, 518 F.3d 287, 292 (5th Cir. 2008) (emphasis supplied).

Consistent with these authorities, the Magistrate Judge correctly held – and the District Court agreed – that the Final Judgment "subsumes the [Final] Award, including the destruction injunction and the sales injunction. The [District] Court thus may treat the Award as if it had entered the order itself, and enforce compliance with these provisions through its contempt or enforcement powers." First R&R, at 19, ECF-191, *adopted*, ECF-200; Second R&R, at 2, 3, ECF-287 (arbitral award subsumed into Final Judgment), *adopted,* ECF-299, 304. The Magistrate Judge further certified that INPROTSA began violating both the Sales Injunction and Destruction Injunction as soon as the Final Award was issued on June 10, 2016. First R&R, at 24, ¶¶ 6-10, ECF-191.

44

The Magistrate Judge and the District Court went astray and erred, however, when they concluded that they could not award Del Monte damages or a compensatory fine arising from $23,358,785 in sales made by INPROTSA between the date of the Final Award and the Final Judgment in violation of the Sales Injunction.   Although it acknowledged that "a court has the discretion to enforce its judgments by awarding damages for conduct occurring after entry of an arbitral award," First R&R, at 25-26, ECF-191, the Magistrate Judge nevertheless held that "none of these cases [cited by Del Monte] involve a court awarding damages for violation of an injunction that occurred prior to confirmation [of] the award and entry of final judgment." *Id*.

The Magistrate Judge and District Judge misapprehended, as matter of law, a federal court's broad mandate under the FAA and New York Convention to enforce arbitral awards.  First, the District Court was *required* under 9 U.S.C. § 13 to enforce the Final Award as if the Award "had been rendered" by the District Court itself.  Second, the District Court was required to enforce the Final Award from the time of its issuance:

> A district court's judgment confirm[ing] and implement[ing] [an] arbitration award ... fixe[s] the rights of the parties ***as of the date of the award***....  Thus, if the award is upheld in a reviewing court, the rights of the parties are determined ***from the date of the award and not from the date of the court's judgment confirming the award.***  Any other result would defeat the purpose of arbitration which is to finally decide the issues between the arbitrating parties without judicial intervention*.*

*Marion Mfg. Co. v. Long*, 588 F.2d 538, 541, 542 (6th Cir. 1978) (emphasis added);

*Robert Lewis Rosen Assocs., Ltd. v. Webb*, 2005 WL 1308942, *2 (S.D.N.Y. Jun. 1,

2005) ("the rights of the parties are determined from the date of the award and not

the date of the court's judgment confirming the award"), *aff'd,* 473 F.3d 498 (2d Cir.

2007).

In *Certified Midwest, Inc. v. Local Union No. 738, Int'l Brotherhood of

Teamsters*, 1987 WL 17470 (N.D. Ill. Sep. 18, 1987), the arbitrator ruled that an

employee was improperly discharged and granted injunctive relief ordering

reinstatement. *Id.* at *1. When the employer failed to comply with the injunction

and instead, as here, chose to unsuccessfully challenge the award, the court held that

"in order to enforce the arbitrator's award, we must grant [the employee] back pay

*dating from the date of that award*." *Id.* at *2 (emphasis added). *See also Falls

Stamping & Welding Co v. Int'l Union, United Automobile, Aircraft & Agriculture

Implement Workers of America*, 1978 WL 14034, *2 (N.D. Ohio Sep. 18, 1978)

(same, effectuating arbitrator's order enjoining reinstatement by awarding damages

from date of award until time of reinstatement), *aff'd*, 667 F.2d 1026 (6th Cir. 1981);

*Sheet Metal Workers Int'l Assoc., Local No. 18 v. Household Utils., Inc.*, 638 F.

Supp. 177, 181 (E.D. Wisc. 1986) (enforcing arbitrator's award requiring defendant

to employ union workers and awarding damages incurred from effective date of

award).

Because 9 U.S.C. § 13 mandates that the terms of the Final Award are subsumed into and become part of the Final Judgment, the District Court was required to treat the Final Award if it had been rendered by it on June 10, 2016. Del Monte's rights under the Sales Injunction vested and were enforceable on the day the Final Award was issued. Therefore, the Magistrate Judge's conclusion of law, ECF-191 at 26, adopted by the District Court, ECF-200, that there was no legal authority authorizing the District Court to enforce the Sales Injunction after issuance of the Final Award (or, for that matter, to sanction INPROTSA for violating the Sales Injunction after issuance of the Final Award) is manifestly incorrect and requires reversal of the March 18, 2019 Adoption Order. The District Court was empowered – indeed, *required* –  to enforce *all* violations of the Sales Injunction whether they occurred *before* or *after* entry of Final Judgment.

The rationale behind 9 U.S.C. § 13 makes sense. The FAA grants no safe harbor to contemnors who violate an arbitral award or a tribunal's injunction merely because the district court has not yet had an opportunity to confirm the award or enter final judgment. To construe the FAA in any other manner would incentivize the losing party to delay confirmation of the award so that it may engage in injunction violations and other misconduct with impunity and would treat arbitral

awards with the historic disdain that the FAA expressly rejected.[12]  Indeed, in this case, although Del Monte promptly sought confirmation of the Final Award on October 11, 2016, ECF-6, the District Court mistakenly failed to enter a confirmation order when it dismissed INPROTSA's Petition to Vacate, ECF-24, and only after this Court remanded the case to the District Court to rule on Del Monte's Cross Petition to Confirm, ECF-39, did the District Court eventually confirm the Final Award.  By the time the District Court had entered the Confirmation Order on May 2, 2017, ECF-47, and the Final Judgment on May 17, 2017, ECF-52, the damage to Del Monte had already been done.  INPROTSA had pocketed an additional $23.36 million in ill-gotten sales revenues in the 11 months since the issuance of the Final Award.  ECF-179, at ¶¶ 2-3, Table 7.

Ironically, the District Court justified finding INPROTSA in contempt for its post-Final Judgment injunction violations

> because INPROTSA knew of the injunctions, knew that it had been ordered to destroy the pineapples or sell them only to Del Monte, and chose instead to farm them as it normally would and sell them to third-party Fruver *in hopes that it would win at the appellate level*.

---

[12] "[T]he FAA rejects the view that arbitration is inferior to court proceedings as a method of deciding important rights."  *THI of New Mexico at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, 1165-66 (10th Cir. 2014) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625-27 (1985)); *Campbell's Foliage, Inc. v. Fed. Crop Ins. Corp.*, 562 F. App'x 828, 830 (11th Cir. 2014) (noting Congress' rejection of the "judiciary's distaste for arbitration").

Contempt Order, at 9-10 (emphasis supplied). The same rationale applies to INPROTSA's injunction violations occurring *after* issuance of the Final Award but *before* entry of the Final Judgment: INPROTSA knew of the injunctions, knew that it had been ordered to destroy the pineapples and not to sell them to third parties, but chose instead to sell them to third-party Fruver in hopes that it would convince the District Court to vacate the Final Award. In both scenarios, INPROTSA gambled and lost and should suffer the consequences.

The prejudicial effect of the District Court's ruling could not be more obvious: By ignoring the clear mandate of 9 U.S.C. § 13, the District Court excused INPROTSA's unabashed violation of the Sales Injunction for nearly one year (from June 10, 2016 through May 17, 2017) and allowed it to keep all of its ill-gotten gains reaped from blatant injunction violations during that time period, and provided Del Monte with absolutely no recourse. In short, based on a misreading of its authority under 9 U.S.C. § 13, the District Court's ruling essentially forgave INPROTSA's violation of the Sales Injunction for no legitimate reason. The law should not, and does not, permit such an inequitable result.

For these reasons, Del Monte respectfully requests the Court to reverse the District Court's March 18, 2019 Adoption Order, ECF-200, and remand for entry of an order awarding Del Monte damages of $23,358,785 arising from INPROTSA's prohibited pineapple sales between June 10, 2016 and May 17, 2017.

49

### C.    INPROTSA's Officers, Jorge Gurria and Manuel Gurria, Should Be Held in Contempt

Del Monte's March 26, 2018 Motion to Show Cause requested the District Court to hold INPROTSA and its executive officers, Jorge Gurria and Manuel Gurria, in contempt for violating the Sales and Destruction Injunctions.  ECF-137, at 13-17.  Del Monte demonstrated, to the satisfaction of the Magistrate Judge, that the Gurrias were fully aware of the Final Award and the District Court's Confirmation Order and Final Judgment, and that they either directed or allowed INPROTSA to violate the Destruction and Sales Injunctions.[13]  Upon finding that INPROTSA had violated the Sales and Destruction Injunctions, First R&R, at 22, 24-25, ECF-191; Second R&R, at 2-4, 8-10, ECF-287, the Magistrate Judge "recommend[ed] that Del Monte's motion for an order to show cause be granted as to Inprotsa, and its officers, Jorge Luis Gurria Hernandez and Manuel Gurria Ordonez."  First R&R, at 22, ECF-191, *adopted*, March 18, 2019 Adoption Order, ECF-200; Second R&R, at 3-4, ECF-287 (same).

The District Court thereafter issued its Order to Show Cause, ECF-299, directing "Inversiones y Procesadora Tropical INPROTSA, S.A., and its corporate representative to show cause as to why it should not be held in contempt for its noncompliance with this Court's Order and Final Judgment by continuing to sell

---

[13] INPROTSA's "officers, agents, servants, employees, and attorneys" are bound by the injunctions in accordance with Fed. R. Civ. P. 65(d)(2)(B).

pineapples that resulted from Del Monte seeds above 7% between May 2017 and April 2018." ECF-299, at 1. The District Court further ordered INPROTSA to "file a response in writing to the show cause order by no later than November 18, 2020." ECF-299, at 1. INPROTSA file a response on November 16, 2020, ECF-300 (the Gurrias did not file any response), but the District Court held INPROTSA's showing (consisting mainly of regurgitated jurisdictional challenges) was inadequate and held INPROTSA in contempt. Contempt Order, at 2. ECF-304 & 306. The District Court's Contempt Order, however, is silent as to the Gurrias and whether they, too, should be held in contempt. Whether through oversight or otherwise, the District Court's Contempt Order must be corrected to expressly include the Gurrias within the scope of the order.

> As the Eleventh Circuit explained in *Leshin*:

> "A command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience and may be punished for contempt."

*Id.* at 1236 (*quoting U.S. v. Fleischman*, 339 U.S. 349, 357-58 (1950)). *Accord American Airlines, Inc. v. Allied Pilots Assoc.*, 228 F.3d 574, 581 (5th Cir. 2000) (officers who failed "to cause the [defendant corporation] to comply with the district court's order … are subject to contempt charges for their acts (or omissions)…."); *Electrical Workers Pension Trust Fund of Local Union #58 v. Gary's Electric*

51

*Service Co.*, 340 F.3d 373, 382 (6th Cir. 2003) (reversing order dismissing contempt petition against officer of disobedient corporation since there was evidence that officer knew of court's order and failed to comply with it).

The Gurrias are as culpable as the corporate entity they control for the deliberate violation of the Sales Injunction. They, too, should be held in contempt. The Court is, therefore, requested to direct the District Court to correct its August 10, 2021 Contempt Order to specifically hold Jorge Gurria and Manuel Gurria in contempt and to hold them jointly and severally liable for the payment of a compensatory fine to Del Monte and for the payment of the attorneys' fees awarded to Del Monte. *See, e.g., Gary's Electric Service*, 340 F.3d at 386 (vacating district court's decision and remanding for determination whether corporate officer should be held in contempt); *Chicago Truck Drivers v. Bhd. Lab. Leasing*, 207 F.3d 500, 508 (8th Cir. 2000) (reversing and remanding because district court made "no express findings concerning whether [employee] committed acts which might support a finding of contempt against him personally").

## VIII.

## <u>CONCLUSION</u>

Del Monte respectfully requests the Court to reverse the District Court's Contempt Order with instructions to enter a judgment (i) requiring INPROTSA to disgorge $16,373,684 in sales revenue collected between the date of the Final

Judgment and September 2018 and $23,358,785 in sales revenue collected between the date of the Final Award and the Final Judgment and (ii) holding Jorge Gurria and Manuel Gurria in contempt and jointly and severally liable for the compensatory fines, damages and attorney's fees imposed.

Dated:  October 18, 2021                     Respectfully submitted,

                                            By: **s/ Brian J. Stack**
                                            Brian J. Stack, Esq.
                                            Email:  bstack@stackfernandez.com
                                            Robert Harris, Esq.
                                            Email:  rharris@stackfernandez.com
                                            Denise B. Crockett, Esq.
                                            Email: dcrockett@stackfernandez.com
                                            STACK FERNANDEZ & HARRIS, P.A.
                                            1001 Brickell Bay Drive, Suite 2650
                                            Miami, Florida  33131
                                            Tel.  305.371.0001

                                            *Attorneys for Appellant, Del Monte*
                                            *International GMBH*

## IX.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and Eleventh Circuit Rule 32-4:

**X**    this document contains 12,892 words, or

___ this brief uses a monospaced typeface and contains [state the number of] lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

**X**    this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14 point font Times New Roman, or

___ this document has been prepared in a monospaced typeface using [state name and version of word-processing program] with [state number of characters per inch and name of type style].

By:  s/Brian J. Stack
Brian J. Stack, Esq.

Dated:  October 18, 2021

54

# X.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 18, 2021, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF-system.  Participants in the case who are registered CM/ECF-users will be served by the appellate CM/ECF-system.

By: <u>s/Brian J. Stack</u>
    Brian J. Stack, Esq.